UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BECKY L. LEACH,                                       Case No. 12-13150

           Plaintiff,                        Denise Page Hood
v.                                                    United States District Judge

COMMISSIONER OF SOCIAL SECURITY,          Michael Hluchaniuk
                                                      United States Magistrate Judge

           Defendant.
_____/

**REPORT AND RECOMMENDATION**
**CROSS-MOTIONS FOR SUMMARY JUDGMENT (Dkt. 12, 14)**

## I.    PROCEDURAL HISTORY

### A.    Proceedings in this Court

On July 18, 2012, plaintiff filed the instant suit seeking judicial review of

the Commissioner's unfavorable decision disallowing benefits.  (Dkt. 1).  Pursuant

to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(b)(3), District Judge Denise Page

Hood referred this matter to the undersigned for the purpose of reviewing the

Commissioner's decision denying plaintiff's claim for a period of disability and

disability insurance benefits.  (Dkt. 2).  This matter is before the Court on

cross-motions for summary judgment.  (Dkt. 12, 14).

### B.    Administrative Proceedings

Plaintiff filed the instant claims on August 8, 2008, alleging that she became

disabled on August 17, 2006.  (Dkt. 8-3, Pg ID 89).  The claim was initially

disapproved by the Commissioner on June 12, 2009.  (Dkt. 8-3, Pg ID 89).

Plaintiff requested a hearing and on July 7, 2010, plaintiff appeared with counsel

before Administrative Law Judge (ALJ) Richard L. Sasena, who considered the

case de novo.  In a decision dated November 16, 2010, the ALJ found that plaintiff

was not disabled.  (Dkt. 8-3, Pg ID 89-101).  Plaintiff requested a review of this

decision on November 30, 2010.  (Dkt. 8-2, Pg ID 43).  The ALJ's decision

became the final decision of the Commissioner when, after the review of additional

exhibits,[1] the Appeals Council, on February 21, 2012, denied plaintiff's request for

review.  (Dkt. 8-2, Pg ID 29-31); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541,

543-44 (6th Cir. 2004).

    For the reasons set forth below, the undersigned **RECOMMENDS** that

plaintiff's motion for summary judgment be **GRANTED** in part, that defendant's

motion for summary judgment be **DENIED** in part, that the findings of the

Commissioner be **REVERSED** in part, and that this matter be **REMANDED**

---

[1] In this circuit, where the Appeals Council considers additional evidence but denies a request to review the ALJ's decision, since it has been held that the record is closed at the administrative law judge level, those "AC" exhibits submitted to the Appeals Council are not part of the record for purposes of judicial review.  *See Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir. 1993); *Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996). Therefore, since district court review of the administrative record is limited to the ALJ's decision, which is the final decision of the Commissioner, the court can consider only that evidence presented to the ALJ. In other words, Appeals Council evidence may not be considered for the purpose of substantial evidence review.

under sentence four.

## II.    FACTUAL BACKGROUND

### A.    ALJ Findings

Plaintiff was 40 years of age on the alleged disability onset date and 44 years old at the time of the last adminsitrative hearing.  (Dkt. 8-3, Pg ID 91).  Plaintiff's past relevant work included work as a prep cook, a medical billing clerk, a production assembler, and a newspaper district manager.  (Dkt. 8-3, Pg ID 99). The ALJ applied the five-step disability analysis to plaintiff's claim and found at step one that plaintiff had not engaged in substantial gainful activity since the alleged onset date.  (Dkt. 8-3, Pg ID 91).  At step two, the ALJ found that plaintiff's degenerative disc disease, sleep apnea, morbid obesity, gastroesophageal reflux disease, vascular dementia with depressed mood, and panic disorder were "severe" within the meaning of the second sequential step.  (Dkt. 8-3, Pg ID 92). At step three, the ALJ found no evidence that plaintiff's combination of impairments met or equaled one of the listings in the regulations.  *Id.*  At step four, the ALJ found that plaintiff could not perform her previous work.  (Dkt. 8-3, Pg ID 99).  The ALJ concluded that plaintiff had the residual functional capacity to perform sedentary work except the claimant can occasionally climb, balance, stoop, kneel, crouch, or crawl; can never use ladders; requires a sit/stand option after 15 to 30 minutes; can occasionally perform reaching and handling with the

right upper extremity; cannot perform any overhead reaching with the right arm; and is limited to simple, routine, repetitive tasks.  (Dkt. 8-3, Pg ID 94).  At step five, the ALJ denied plaintiff benefits because plaintiff could perform a significant number of jobs available in the national economy.  (Dkt. 8-3, Pg ID 100).

B.    Plaintiff's Claims of Error

According to plaintiff, although the evidence of record demonstrates that she suffers from the additional severe impairments of a frozen shoulder in her dominant, right upper extremity, fibromyalgia, and uncontrolled hypertension, there is no indication in the ALJ's decision that these impairments were considered at any step of the evaluation.  Further, although the ALJ found that plaintiff's obstructive sleep apnea, obesity, degenerative disc disease, and degenerative joint disease constitute severe impairments, plaintiff contends that there is no indication in the ALJ's decision that these conditions were considered, alone or in combination with plaintiff's obesity, at any other step of the sequential evaluation process, as required by Social Security policy and regulations.

Without adequate explanation or reasoning, the ALJ reviewed and rejected all of the medical opinion evidence of record regarding plaintiff's frozen shoulder. According to plaintiff, the limitations found in the RFC determination regarding the use of plaintiff's right, dominant arm are less restrictive than the opined

limitations provided by every medical expert of record.  Therefore, without

providing any rationale for doing so, plaintiff contends that the ALJ crafted an

RFC determination based on his own non-medical opinion with regard to

plaintiff's right upper extremity limitations.  According to plaintiff, the ALJ's

decision reveals that he disregarded further limitations included in the medical

opinion evidence of record.  Specifically, plaintiff says the ALJ disregarded the

following: Dr. Gary Davis restricted the plaintiff to "no over-the-head reaching or

below-the-knee reaching with the right upper extremity;" Dr. Davis also returned

plaintiff to work with restrictions from "no right-handed work, no

over-the-shoulder reaching, and lifting limited to 5 pounds;" Dr. Terry Weingarden

provided a recommendation that plaintiff "not perform any work above waist level

with the upper extremity due to her marked loss of range of

motion of the right shoulder;" and Dr. Qureshi stated that plaintiff "could never

perform overhead reaching, pushing, or pulling with the right upper extremity."

     Moreover, the ALJ's decision is also deficient with regard to the evaluation

of plaintiff's emotional impairments as the RFC and hypothetical questioning

present to the vocational witness did not adequately account for the findings of

"moderate" difficulties in concentration, persistence or pace and "moderate"

difficulties in social functioning, as found by the ALJ.  In the present case, the only

doctors to provide an opinion regarding plaintiff's psychological conditions were

Dr. Gayle Oliver-Brannon, Ph.D., and Dr. James L. Day, Ph.D.  (Tr.

490).  Following examination of the plaintiff, these expert doctors - acting at the

request of Social Security - determined that plaintiff suffered from Vascular

Dementia with Depressed Mood and a Panic Disorder.  (Tr. 490).  As a result, they

opined that plaintiff's prognosis was guarded and that she "seemed poor for

competitive employment."  (Tr. 490).  A main concern on plaintiff's examination

was her memory as well as that she "is not in contact with reality."  (Tr. 488-489).

Because the consultative examiners evaluated plaintiff on one occasion, the ALJ

dismissed their opinions, in their entirety.  (Tr. 69).  However, according to

plaintiff, the ALJ provided no evidentiary basis for the final RFC determination

with regard to plaintiff's psychological conditions.  Rather, the ALJ substituted his

own non-medical opinion in place of the actual medical opinions from expert,

examining doctors.  The expert opinions of Drs. Oliver-Brannon and Day clearly

indicate that plaintiff's ability to function in competitive employment due to her

psychological conditions would be limited, particularly with regard to memory.

Plaintiff contends that the ALJ simply dismissed the only medical opinion

evidence of record and provided an RFC determination devoid of evidentiary

support, leaving a subsequent reviewer without the ability to conduct meaningful

review of the final decision of the Commissioner of Social Security.

    Due to the plaintiff's psychological conditions, the ALJ determined that she

suffers from "moderate difficulties" in social functioning. (Tr. 64). However, according to plaintiff, both the hypothetical questioning presented to the vocational witness at the hearing and the RFC determination are completely devoid of any limitations in social functioning. (See Tr. 20, 46-52). Finally, although dismissing plaintiff's credibility in his decision, plaintiff asserts that the ALJ provided no rationale for doing so.

C.    Commissioner's Motion for Summary Judgment

According to the Commissioner, the Sixth Circuit has established that an ALJ need not designate each of a claimant's impairments as "severe" or "not severe." Rather, in order to proceed with the sequential evaluation process, it is only necessary for the ALJ to find that the claimant has a severe impairment or a combination of impairments. *See Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987). In the instant case, the ALJ found that plaintiff "ha[d] the following impairments: degenerative disc disease, degenerative joint disease, sleep apnea, morbid obesity, gastroesophageal reflux disease, vascular dementia with depressed mood, and panic disorder." (Tr. 63). The Social Security Administration has explained that the severity regulation does no "more than allow the [Commissioner] to deny benefits summarily to those applicants with impairments of a minimal nature that could never prevent a person from working." SSR 85-28, 1985 WL 56856 (1985) (internal citations omitted). Thus, the

Commissioner contends that it is immaterial which impairments or how many
impairments an ALJ designates as "severe" since the standard used at step two of
the sequential evaluation is merely a *de minimis* screening device to dispose of
groundless claims.  *See Bowen v. Yuckert*, 482 U.S. 137, 153-54 (1987), adopted as
Social Security Ruling (SSR) 88-3c, 1988 WL 236022 (1988).  As the Sixth
Circuit recognized in *Maziarz*, the real issue is not whether individual impairments
are severe, but whether the ALJ considered the functional limitations resulting
from all of the claimant's impairments at the remaining steps of the sequential
evaluation process.

Contrary to plaintiff's argument, the Commissioner maintains that the ALJ
provided an "evidentiary basis" for his RFC finding.  In a very thorough decision,
the ALJ discussed in detail the evidence that he considered when determining that
plaintiff could perform a range of sedentary work.  (Tr. 60-72).  This evidence
consisted of the objective medical evidence and clinical findings, the medical
opinion evidence, and plaintiff's own testimony.  (Tr. 65-70). Therefore, the
Commissioner asserts that the ALJ's RFC finding is supported by substantial
evidence.

According to the Commissioner, plaintiff makes the same erroneous
argument with regard to her sleep apnea, spinal condition, and right ankle arthritis,
arguing that the ALJ ignored these impairments when formulating his RFC at the

later steps of the sequential evaluation process.  However, the Commissioner

points out that plaintiff conceded that the ALJ discussed her sleep apnea, spinal

condition, and right ankle arthritis in his decision.  (Pl.'s Br. at 8-10; Tr. 65-70).

Similarly, the ALJ did not need to designate plaintiff's hypertension as

"severe" at step two because he found that she had other severe impairments and

proceeded to the following steps of the sequential evaluation process.  (Tr. 63).

Thus, the question is whether the ALJ considered plaintiff's hypertension when

determining that she could perform other work.  *Id*.  According to the

Commissioner, the ALJ explicitly considered plaintiff's hypertension in his

decision when formulating his RFC assessment, noting that Cornelio Naguit, M.D.,

diagnosed plaintiff with hypertension.  (Tr. 66).  The ALJ also noted that Devin

Brown, M.D., opined that the nonspecific white matter pattern on plaintiff's brain

imaging was probably related to hypertension and Mohammed Alkhateeb, M.D.,

diagnosed essential hypertension.  (Tr. 67).  Further, the ALJ implicitly considered

plaintiff's hypertension when he evaluated the evidence from physicians who

considered plaintiff's hypertension.  (Tr. 66-70).  Accordingly, the Commissioner

maintains that the ALJ properly considered plaintiff's hypertension throughout the

steps of the sequential evaluation process along with her other impairments.

Similarly, plaintiff argues that the ALJ did not consider the limitations

resulting from her right shoulder impairment.  Again, the Commissioner contends

that plaintiff conceded that the ALJ discussed her right shoulder impairment and related medical evidence in his decision. And the Commissioner again argues that this Court should reject plaintiff's argument that the ALJ ignored evidence relating to her right shoulder, where the ALJ explicitly discussed this evidence in his decision. Further, the Commissioner asserts that, based on his review of the relevant medical evidence related to plaintiff's right shoulder, the ALJ accounted for plaintiff's shoulder impairment by limiting her to sedentary work that involved only occasional reaching and handling with her right arm and no overhead reaching with her right arm. (Tr. 65).

The Commissioner also urges the Court to reject plaintiff's argument that the ALJ's RFC is incorrect because she is more limited as a result of her right shoulder. According to the Commissioner, the ALJ incorporated most of Dr. Qureshi's limitations in his RFC finding. (Tr. 65, 70, 661-70). In contrast, the Commissioner contends that the ALJ properly gave little weight to the opinions of Drs. Davis and Weingarden because they were inconsistent with the evidence of record as a whole. (Tr. 66-70). Significantly, plaintiff's January 2007 and August 2010 right shoulder x-rays revealed normal findings. (Tr. 69, 558, 664). Plaintiff's June 2006 right shoulder MRI showed findings consistent with no more than mild rotator cuff tendonopathy with no damage to any of the structures of the right shoulder. (Tr. 472). Also, a September 2006 electromyogram of plaintiff's

right arm revealed normal results. (Tr. 68, 304). In February 2007, the medical evidence revealed that plaintiff could actively move all four of her extremities. (Tr. 546). In February 2008, Dr. Melonakos reported that plaintiff's right shoulder's forward flexion and abduction was 50 degrees. (Tr. 376). In 2009, Dr. Qureshi reported that plaintiff had limited right shoulder range of motion, but her bilateral grasp was 4/5, and she could dress and undress herself and get on and off the examination table without any difficulty. (Tr. 471). Further, in 2009, although Dr. Weingarden indicated that plaintiff had active abduction and forward flexion of her right shoulder up to 30 degrees, he reported that she had no atrophy and appeared to overreact to the light skin palpation of her right shoulder. (Tr. 476). Furthermore, the ALJ reasonably gave Dr. Davis's opinions little weight because his assessment was conducted almost four years before the ALJ's decision. (Tr. 66, 549). Thus, Dr. Davis did not have a longitudinal picture of plaintiff's condition during the relevant period. The ALJ also reasonably gave Dr. Weingarden's opinion little weight because he treated plaintiff on only one occasion. (Tr. 67). As such, the Commissioner contends that Dr. Weingarden's opinion did not warrant more weight due to the nature of the examining relationship and the length and frequency of the treating relationship between him and plaintiff.

According to the Commissioner, plaintiff's self-reported activities further

contradict the restrictions found by Drs. Davis and Weingarden. For example, Plaintiff helped her husband prepare simple meals. (Tr. 192, 194), washed dishes (Tr. 192), placed laundry in her washer and dryer (Tr. 194), and made her bed (Tr. 192). She also took care of her personal needs, such as bathing, getting dressed, fixing hair, and brushing her teeth. (Tr. 192). Even though Plaintiff claimed she learned how to perform tasks with her left hand rather than her right hand, the Commissioner asserts that her range of daily activities still undermine her claims of disabling limitations. Accordingly, the Commissioner asks the Court to conclude that the ALJ properly gave little weight to the unduly restrictive opinions of Drs. Davis and Weingarden.

The Commissioner also argues that even if she had more restrictive right arm limitations, plaintiff would still be able to perform work that existed in significant numbers in the national economy. During the administrative hearing, plaintiff's counsel asked the vocational expert to assume a hypothetical individual who could lift only 2-5 pounds with her dominant (right) arm and could not do a full extended stretch or reach forward, to the side, or overhead. (Tr. 51). In response, the vocational expert stated that such an individual would be able to perform the occupation of surveillance systems monitor, of which there existed approximately 2,000 jobs in the Southeastern Michigan region. (Tr. 52). Because the evidence shows that plaintiff can perform at least one job existing in significant numbers

named by the vocational expert, the Commissioner argues that the ALJ met his burden at step five and substantial evidence supports his determination that plaintiff was not disabled.

Contrary to plaintiff's claims, the Commissioner also contends that the ALJ explicitly considered plaintiff's obesity in his decision, indicating that she was diagnosed with obesity and was advised to lose weight. (Tr. 67). The ALJ also considered the treatment notes from the physicians who included the effects of obesity in their opinions and assessments. (Tr. 65-70). Therefore, at steps 4 and 5, the ALJ continued to consider all of the evidence of record and adequately accommodated the limitations that resulted from plaintiff's obesity by restricting her to sedentary work; occasional postural activities, except that she could never climb ladders; and a sit/ stand option after 15-30 minutes (Tr. 65). All of these limitations accounted for any potential difficulties plaintiff may have had due to her weight. Moreover, the record is devoid of any specific functional limitations plaintiff may have had due to her obesity that were not accounted for in the ALJ's RFC assessment. Notably, plaintiff does not specify how her obesity impairs her ability to work. Under such circumstances, the Commissioner urges the Court to reject plaintiff's argument.

The Commissioner next argues that because the ALJ adequately accounted for plaintiff's mental limitations in his hypothetical question to the vocational

expert, plaintiff's claims in this regard are without merit.  Here, the ALJ inquired

of the vocational expert as to the ability of a hypothetical individual to perform

work at the sedentary exertional level, where the work involved only simple,

routine, and repetitive tasks.  (Tr. 46-49).  The vocational expert responded that

plaintiff could perform the unskilled sedentary occupations of a security

receptionist and a surveillance systems monitor.  (Tr. 49-50, 71).  According to the

Commissioner, a limitation to unskilled, simple, routine work involving repetitive

tasks is consistent with the ALJ's finding that plaintiff had moderate difficulty in

maintaining concentration, persistence, or pace.  (Tr. 64).  Moreover, plaintiff's

counsel asked the vocational expert during the hearing to eliminate any job that

would require a production pace.  (Tr. 51). The vocational expert responded that

such an individual would be able to perform work as a surveillance systems

monitor.  (Tr. 52).  Thus, the Commissioner argues that even if the ALJ accepted

plaintiff's alleged limitation, she would still be found not disabled.

    According to the Commissioner, the ALJ properly gave little weight to this

extreme opinion because the psychologists only evaluated plaintiff one time and

had not previously treated her for her mental complaints.  (Tr. 69).  Therefore, the

ALJ reasonably gave their opinion little weight based on the examining

relationship and the length and frequency of the treatment.  In addition, the opinion

of the state agency psychologist supported the ALJ's decision and

contradicted the opinion of the consultative psychologists.  (Tr. 492-95).  The state

agency psychologist reported that plaintiff was not significantly limited in most of

the mental categories, except that she had no more than moderate limitations in her

ability to respond appropriately to changes in a work setting and understand,

remember, and carry out detailed instructions.  (Tr. 70, 492-93).  The

Commissioner maintains that the ALJ properly relied on the opinions of the state

agency psychiatrist because, as the regulations provide, state agency medical

consultants are "highly qualified" physicians and "experts" in the Social Security

disability evaluations.  20 C.F.R. § 404.1527(f)(2)(i).

     The Commissioner next contends that plaintiff incorrectly asserts that the

ALJ should have included social limitations based on the ALJ's "B" criteria

assessment that plaintiff had moderate difficulties in social functioning.  However,

"a particular assessment on a [Psychiatric Review Technique Form] does not

mandate a rigid checklist of restrictions that must be included in this questioning."

*Bohn-Morton*, 389 F.Supp.2d at 807.  Here, the ALJ's finding with regard to

plaintiff's social limitations is properly rooted in the administrative record.  The

ALJ reasonably did not include any social functioning limitations in his RFC or

hypothetical question to the vocational expert.  (Tr. 45-50, 65).  Specifically, the

state agency psychologist found that plaintiff had only mild difficulties in

maintaining social functioning.  (Tr. 70).  Indeed, in his Mental RFC assessment,

the state agency psychologist reported that plaintiff was not significantly limited in all of the categories pertaining to social interaction. (Tr. 493). He concluded that plaintiff was able to do simple, sustained, unskilled tasks with persistence and did not indicate that she had any social functioning limitations. (Tr. 494). The Commissioner also argues that plaintiff still would have been able to perform other work even if she had social functioning limitations as she alleges. Indeed, plaintiff's counsel asked the vocational expert if there were jobs available for a hypothetical individual who, inter alia, was restricted to minimal contact with the general public. (Tr. 51). In response, the vocational expert stated that such an individual would be able to perform the occupation of surveillance systems monitor. (Tr. 52). Thus, Plaintiff's argument is unavailing.

Contrary to plaintiff's contention, the Commissioner asserts that the ALJ considered the factors listed in 20 C.F.R. § 404.1529 and SSR 96-7p when assessing her credibility. (Tr. 65-70). A review of the ALJ's thorough decision reveals that he indeed considered the objective medical evidence, the clinical findings, the medical opinion evidence, and plaintiff's own testimony when assessing her credibility and RFC. (Tr. 65-70). Further, as the ALJ highlighted, although plaintiff claims her limitations are disabling, her alleged limitations would not preclude her from performing work on a sustained basis. (Tr. 70). For instance, during the administrative hearing, plaintiff's counsel submitted plaintiff's

alleged limitations in a hypothetical question to the vocational expert, who testified that there would still be jobs available. (Tr. 51-52). Thus, the Commissioner concludes that plaintiff's argument is unpersuasive.

## III.   DISCUSSION

### A.   Standard of Review

In enacting the social security system, Congress created a two-tiered system in which the administrative agency handles claims, and the judiciary merely reviews the agency determination for exceeding statutory authority or for being arbitrary and capricious. *Sullivan v. Zebley*, 493 U.S. 521 (1990). The administrative process itself is multifaceted in that a state agency makes an initial determination that can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council. *Bowen v. Yuckert*, 482 U.S. 137 (1987). If relief is not found during this administrative review process, the claimant may file an action in federal district court. *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir.1986).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005);

*Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may ... consider the credibility of a claimant when making a determination of disability."); *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, particularly since the ALJ is charged with observing the claimant's demeanor and credibility.") (quotation marks omitted); *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence."). "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers*, 486 F.3d at 247, quoting Soc. Sec. Rul. 96-7p, 1996 WL 374186, *4.

If supported by substantial evidence, the Commissioner's findings of fact are

conclusive.  42 U.S.C. § 405(g).  Therefore, this Court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion."  *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*).  Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Rogers*, 486 F.3d at 241; *Jones*, 336 F.3d at 475.  "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts."  *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted), citing, *Mullen*, 800 F.2d at 545.

The scope of this Court's review is limited to an examination of the record only.  *Bass*, 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001).  When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight.  *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992).  "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council."  *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001).  There is no requirement, however, that either

the ALJ or the reviewing court must discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed.Appx. 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal citation marks omitted); *see also Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed.Appx. 521, 526 (6th Cir. 2006).

B.    <u>Governing Law</u>

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994); *accord*, *Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed.Appx. 515, 524 (6th Cir. 2003). There are several benefits programs under the Act, including the Disability Insurance Benefits Program (DIB) of Title II (42 U.S.C. §§ 401 *et seq*.) and the Supplemental Security Income Program (SSI) of Title XVI (42 U.S.C. §§ 1381 *et seq*.). Title II benefits are available to qualifying wage earners who become disabled prior to the expiration of their insured status; Title XVI benefits are available to poverty stricken adults and children who become disabled. F. Bloch, Federal Disability Law and Practice § 1.1 (1984). While the two programs have different eligibility requirements, "DIB and SSI are available only for those who have a 'disability.'" *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). "Disability" means:

inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); 20 C.F.R. § 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

Step One: If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.

Step Two: If the claimant does not have a severe impairment or combination of impairments, that "significantly limits ... physical or mental ability to do basic work activities," benefits are denied without further analysis.

Step Three: If plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.

Step Four: If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.

Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

*Carpenter v. Comm'r of Soc. Sec.*, 2008 WL 4793424 (E.D. Mich. 2008), citing, 20 C.F.R. §§ 404.1520, 416.920; *Heston*, 245 F.3d at 534. "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates." *Colvin*, 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work." *Jones*, 336 F.3d at 474, cited with approval in *Cruse*, 502 F.3d at 540. If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Commissioner. *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given [his] RFC and considering relevant vocational factors." *Rogers*, 486 F.3d at 241; 20 C.F.R. §§ 416.920(a)(4)(v) and (g).

If the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if the court would have decided the matter differently and even where substantial evidence supports the opposite conclusion. *McClanahan*, 474 F.3d at 833; *Mullen*, 800 F.2d at 545. In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

C.   <u>Analysis and Conclusions</u>

1.    Medical advisor

Plaintiff does not specifically making a "treating physician rule" argument.
Rather, she argues that the ALJ formulated his own medical opinions, rejected a
variety of medical opinions in the record, and failed to adequately explain why he
did so.  A major flaw in the ALJ's analysis and rejection of the medical opinions in
the record is the lack of any contrary opinions or other expert opinions in the
record as to plaintiff's physical impairments or limitations.  In this case, the single-
decision maker (SDM) model was used pursuant to 20 C.F.R. § 404.906(b)(2).
This regulation provides streamlined procedures as an experiment, in which State
Agency disability examiners may decide cases without documenting medical
opinions from State Agency medical consultants.  The "single decisionmaker
model" was an experimental modification of the disability determination process
that happens to have been used in Michigan.  *See Leverette v. Comm'r*, 2011 WL
4062380 (E.D. Mich. 2011).  This experiment eliminated the reconsideration level
of review and allowed claims to go straight from initial denial to ALJ hearing.  *Id*.
Most significantly, it allowed the state agency employee (the single decisionmaker)
to render the initial denial of benefits without documenting medical opinions from
the state agency medical consultants.  *Id*., citing 20 C.F.R. §§ 404.906(b)(2),
416.1406(b)(2).  The Programs Operations Manual System (POMS) requires it to
"be clear to the appeal-level adjudicator when the SSA-4734-BK [the PRFC

assessment form] was completed by an SDM because SDM-completed forms are

not opinion evidence at the appeal levels."  POMS DI § 24510.05.  Plaintiff's

physical impairments were evaluated by an SDM, Vivian Walker, who concluded

that her impairments were not severe.  (Dkt. 8-7, Pg ID 512-519).  Thus, no

medical opinion was obtained at this level of review, in accordance with this

model.

 While the ALJ did not rely on the opinion of the SDM, which would have

been wholly improper, the lack of any medical opinion on the issue of equivalence

is still an error requiring remand.  As set forth in *Stratton v. Astrue*, — F.Supp.2d

—; 2012 WL 1852084, *11-12 (D. N.H. 2012), SSR 96-6p describes the process

by which ALJs are to make step-three determinations:

> The administrative law judge ... is responsible for
> deciding the ultimate legal question whether a listing is
> met or equaled. As trier of the facts, an administrative
> law judge ... is not bound by a finding by a State agency
> medical or psychological consultant or other program
> physician or psychologist as to whether an individual's
> impairment(s) is equivalent in severity to any impairment
> in the Listing of Impairments. However, *longstanding
> policy requires that the judgment of a physician* (or
> psychologist) designated by the Commissioner *on the
> issue of equivalence on the evidence* before the
> administrative law judge ... *must be received into the
> record as expert opinion evidence and given appropriate
> weight*.

1996 WL 374180, at *3 (emphasis added); *Barnett v. Barnhart*, 381 F.3d 664, 670

(7th Cir. 2004) ("Whether a claimant's impairment equals a listing is a medical judgment, and an ALJ must consider an expert's opinion on the issue.") (citing 20 C.F.R. § 1526(b)); *Retka v. Comm'r of Soc. Sec.*, 1995 WL 697215, at *2 (6th Cir. 1995) ("Generally, the opinion of a medical expert is required before a determination of medical equivalence is made.") (citing 20 C.F.R. § 416.926(b)); *Modjewski v. Astrue*, 2011 WL 4841091, at *1 (E.D. Wis. 2011) (warning that an ALJ who makes a step-three equivalence determination without expert-opinion evidence runs the risk of impermissibly playing doctor).

The *Stratton* court further explains that SSR 96-6p treats equivalence determinations differently from determinations as to whether an impairment meets a listing, requiring expert evidence for the former, but not the latter. *Id.* at *12; citing *Galloway v. Astrue*, 2008 WL 8053508, at *5 (S.D. Tex. 2008) ("The basic principle behind SSR 96-6p is that while an ALJ is capable of reviewing records to determine whether a claimant's ailments meet the Listings, expert assistance is crucial to an ALJ's determination of whether a claimant's ailments are equivalent to the Listings.") (citation and quotation marks omitted). This expert opinion requirement can be satisfied by a signature on the Disability Determination Transmittal Form. *Stratton*, at *12, citing SSR 96-6p, 1996 WL 374180, at *3 (The expert-opinion evidence required by SSR 96-6p can take many forms, including "[t]he signature of a State agency medical ... consultant on an SSA-831-

U5 (Disability Determination and Transmittal Form).”); *Field v. Barnhart*, 2006 WL 549305, at *3 (D. Me. 2006) (“The Record contains a Disability Determination and Transmittal Form signed by Iver C. Nielson, M.D .... discharging the commissioner’s basic duty to obtain medical-expert advice concerning the Listings question.”).  There is no Disability Determination and Transmittal Form signed by a medical advisor as to plaintiff’s physical impairments in this record.  (Dkt. 8-3, Pg ID 85).

The great weight of authority[2] holds that a record lacking any medical advisor opinion on equivalency requires a remand.  *Stratton*, at *13 (collecting cases); *see e.g. Caine v. Astrue*, 2010 WL 2102826, at *8 (W.D. Wash. 2010) (directing ALJ to obtain expert-opinion evidence on equivalence where none was in the record); *Wadsworth v. Astrue*, WL 2857326, at *7 (S.D. Ind. 2008) (holding that where record included no expert-opinion evidence on equivalence, “[t]he ALJ erred in not seeking the opinion of a medical advisor as to whether Mr. Wadsworth’s impairments equaled a listing”).  While the government has argued in other cases that courts in this district have concluded that the ALJ need not obtain expert opinion evidence in cases involving an SDM, *see Gallagher v. Comm’r*,

---

[2] In *Stratton*, the court noted that a decision from Maine “stands alone” in determination that 20 C.F.R. § 404.906(b) “altered the longstanding policy that an ALJ is required to seek a medical opinion on the issue of equivalence.” *Id.*, citing *Goupil v. Barnhart*, 2003 WL 22466164, at *2 n. 3 (D. Me. 2003).

2011 WL 3841632 (E.D. Mich. 2011) and *Timm v. Comm'r*, 2011 WL 846059

(E.D. Mich. 2011), the undersigned does not find these cases persuasive.  In both

cases, the court concluded that because the regulations permitted an SDM to make

disability determination without a medical consultant that the ALJ is, therefore,

also permitted to do so where the "single decisionmaker" model is in use.  Nothing

about the SDM model changes the ALJ's obligations in the equivalency analysis.

*See Barnett v. Barnhart*, 381 F.3d 664, 670 (7th Cir. 2004) ("Whether a claimant's

impairment equals a listing is a medical judgment, and an ALJ must consider an

expert's opinion on the issue.") (citing 20 C.F.R. § 1526(b)); *Retka v. Comm'r of

Soc. Sec.*, 1995 WL 697215, at *2 (6th Cir. 1995) ("Generally, the opinion of a

medical expert is required before a determination of medical equivalence is

made.") (citing 20 C.F.R. § 416.926(b)).  Based on the foregoing, the undersigned

cannot conclude that the ALJ's obligation to consult a medical expert in making an

equivalency determination is any different in a case where the SDM model is used.

While the SDM is not required to obtain a medical opinion in cases involving

physical impairment, as noted in *Timm* and *Gallagher*, nothing appears to have

modified the ALJ's obligations and it makes little sense to conclude that the ALJ

relieved from obtaining an expert medical opinion in SDM cases.  Thus, the

undersigned's analysis does not alter the SDM model, which leaves the SDM

discretion as to whether a medical expert is consulted as to physical impairments.

Rather, the undersigned's analysis leaves intact the requirements imposed on an ALJ in making an equivalency determination, which do not otherwise appear to be modified by the SDM model. *See also*, *Maynard v. Comm'r*, 2012 WL 5471150 (E.D. Mich. 2012) ("[O]nce a hearing is requested, SSR 96-6p is applicable, and requires a medical opinion on the issue of equivalence."); *Harris v. Comm'r*, 2013 WL 1192301, *8 (E.D. Mich. 2013) (A medical opinion on the issue of equivalence is required, regardless of whether the SDM model is implicated.). In this case, while consulting examiners were utilized, Drs. Weingarden and Qureshi offered no opinions on the issue of equivalence. *See e.g.*, *Caine v. Astrue*, 2010 WL 2102826, *8 (W.D. Wash. 2010) (Where the state agency consultant offered no findings on equivalence, the ALJ should obtain an updated medical expert opinion in order to meet her obligation to fully and fairly develop the administrative record.)

While the undersigned is not necessarily convinced that plaintiff can show that her physical impairments satisfy the equivalence requirements, "[n]either the ALJ nor this court possesses the requisite medical expertise to determine if [plaintiff]'s impairments ... in combination equal one of the Commissioner's listings." *Freeman v. Astrue*, 2012 WL 384838, at *4 (E.D. Wash. 2012). For these reasons, the undersigned concludes that this matter must be remanded so that the ALJ can obtain the opinion of a qualified medical advisor on the issue of

equivalence as to plaintiff's physical impairments, which will also inform the ALJ regarding the limitations imposed on plaintiff by other medical experts in the record.  In the view of the undersigned, given that the opinions of a medical advisor must be obtained, plaintiff's credibility will necessarily have to be re-assessed in full after such opinions are obtained.

### 3.    Step two analysis

The omission of an impairment from the step two findings does not warrant remand because the ALJ found that plaintiff had other impairments that met the criteria for severity at step two, and thus proceeded to step three in the sequential analysis.  *See Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987) (holding that because the Secretary had found at least one other "severe" limitation, the severity of Miziarz's cervical condition was irrelevant for the step two analysis).  If a claimant has more than one impairment, the ALJ must consider all medically determinable impairments when assessing the RFC, including those that are not severe.  20 C.F.R. § 404.1545(a)(3); *Fisk v. Astrue*, 253 Fed.Appx. 580, 584 (6th Cir. 2007) (noting that once the ALJ determines at least one severe impairment, he "must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe'").  A step two omission is of "little consequence," provided that the ALJ considered "all impairments, severe and nonsevere," in crafting the RFC.  *See Pompa v. Comm'r of Soc. Sec.*, 73

Fed.Appx. 801, 803 (6th Cir. 2003).

Here, plaintiff acknowledges that the step two screening process is essentially a tool used to dispose of groundless claims, based on the medical evidence alone.  Plaintiff contends, however, that the ALJ's failure to acknowledge her well-documented fibromyalgia, shoulder impairment, and hypertension as severe impairments at step two, calls the remainder of the ALJ's evaluation into question.  While the Commissioner contends that the ALJ included these impairments in the factual summary, plaintiff argues that the ALJ failed to make the logical bridge between the evidence and the conclusions reached.

In the view of the undersigned, any error committed by the ALJ in not finding certain impairments severe at step two does not, by itself, warrant remand.  Rather, in this case, the problem is not the step two finding, but the failure to utilize a medical advisor on the issue of equivalency when faced with a variety of conditions, symptoms and illnesses, along with medical opinions regarding plaintiff's limitations, as discussed in detail above.  *See e.g.*, *Mills v. Comm'r*, 2013 WL 967567, *8 (W.D. Mich. 2013) ("[W]hile the ALJ's finding that Plaintiff's alleged mental impairments are not severe is not supported by substantial evidence, such is not the basis for remanding this matter for further factual findings.  Instead, it is the ALJ's faulty RFC determination, informed by his unsupported assessment of the evidence, that justifies remand.").

4.    Mental impairment

Plaintiff contends that James Tripp, Ed.D. is not qualified to offer an opinion on plaintiff's mental impairments and therefore, the ALJ erred in relying on Dr. Tripp's opinions.  Dr. Tripp, as a state agency psychologist, appears qualified to assess plaintiff's mental capacity, and plaintiff offers no evidence suggesting that he is not qualified.  Moreover, state agency doctors are "highly qualified physicians and psychologists who are experts in the evaluation of the medical issues in disability claims under the Act."  *See* 20 C.F.R. §§ 404.1527(e)(2)(i), 416.927(e)(2)(i).

In this case, plaintiff does not offer the opinion of a treating physician who concludes that plaintiff is more mentally impaired than the ALJ found, but points to the examining consultant's opinion.  "In appropriate circumstances, opinions from State agency medical and psychological consultants and other program physicians and psychologists may be entitled to greater weight than the opinions of treating or examining sources."  Social Security Ruling 96-6p, 1996 WL 374180, at *3 (1996); *see also Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 409 (6th Cir. 2009) ("Certainly, the ALJ's decision to accord greater weight to state agency physicians over Blakely's treating sources was not, by itself, reversible error.").  In a report signed on May 31, 2009 and June 4, 2009, examining consultants Gayle Oliver-Brannon, Ph.D., LLP and James Day, Ph.D., LP opined that plaintiff

"seemed poor for competitive employment at the present time." (Dkt. 8-7, Pg ID

523). On June 11, 2009, after reviewing this report and the other evidence of

record, Dr. Tripp concluded that plaintiff was only partially credible because the

severity of the claimed mental limitations were not supported by the medical

evidence. Dr. Tripp concluded that plaintiff was moderately limited in the area of

concentration, persistence, or pace, and that specifically, she was moderately

limited in her ability to understand and remember detailed instructions, her ability

to carry out detailed instructions, and the ability to respond appropriately to

changes in the work setting. Dr. Tripp concluded, however, that despite her

limitations, she was able to perform simple, sustained, unskilled tasks with

persistence.

In the view of the undersigned, the ALJ's reliance on Dr. Tripp's opinions is

supported by substantial evidence in the record. Plaintiff points to no other source

who opines that plaintiff is more functionally limited than as found by Dr. Tripp.

Drs. Day and Oliver-Brannon did not offer an opinion as to whether or how

plaintiff's mental impairments translated into functional impairments. Rather, after

reviewing their report and the other evidence of record, Dr. Tripp offered an

opinion regarding plaintiff's functional mental limitations, which the ALJ adopted.

*See e.g.*, *Lewicki v. Comm'r of Soc. Sec.*, 2010 WL 3905375, *3 (E.D. Mich. 2010)

("Plaintiff's objection ignores a particularly compelling piece of evidence provided

by the same state psychologist who diagnosed Plaintiff's mental limitations in the first place.  The psychologist diagnosed moderate mental impairments, but also concluded that Plaintiff's mental limitations would not prohibit him from performing simple, unskilled work."); *Taylor v. Comm'r*, 2011 WL 2682682 (E.D. Mich. 2011) ("there is no bright-line rule requiring remand whenever an ALJ's hypothetical includes a limitation of 'unskilled work' but excludes a moderate limitation in concentration.  Rather, this Court must look at the record as a whole and determine if substantial evidence supports the ALJ's decision.").  The undersigned sees no basis to disturb the ALJ's findings in this regard.

Plaintiff also complains that the ALJ found that she had moderate difficulties in social functioning, but failed to account for this limitation in the RFC.  The Commissioner says that Dr. Tripp only found mild limitations in social functioning in the PRTF.  It is well-established that the paragraph B criteria used at steps 2 and 3 of the sequential analysis "are not an RFC assessment."  Policy Interpretation Ruling Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims, SSR 96-8p; 1996 WL 374184, at *4 (SSA 1996).  "The mental RFC assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraphs B and C of the adult mental disorder listings in 12.00 or the Listings of Impairments."  *Id.* at 4; *see also Smith v. Halter*, 307 F.3d

377, 379 (6th Cir. 2001) (noting that ALJ properly went beyond a check-the-box approach to develop a complete and accurate assessment of the claimant's mental impairment).

In this case, after making his "B criteria" assessments, Dr. Tripp concluded in the itemized functions that plaintiff was moderately limited in the ability to understand and remember detailed instructions, the ability to carry out detailed instructions, and the ability to respond appropriately to changes in the work setting. Dr. Tripp did not include any specific limitations in the itemized functions for social interaction.  (Dkt. 8-7, Pg ID 525-526).  The ALJ discussed this report (Dkt. 8-3, Pg ID 99), appears to have relied on it in formulating the RFC as to plaintiff's mental impairments and functioning, and ultimately limited plaintiff to "simple, routine, and repetitive tasks."  There is, however, some inconsistency in the ALJ finding that plaintiff had a *moderate* impairment in social functioning and adopting Dr. Tripp's itemized functions, which are based on a *mild* impairment in social functioning.  On remand, the undersigned suggests that the ALJ revisit this issue to ensure that the RFC accounts for plaintiff's moderate limitation in social functioning as found by the ALJ.

## IV.   RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that plaintiff's motion for summary judgment be **GRANTED** in part, that defendant's

motion for summary judgment be **DENIED** in part, that the findings of the

Commissioner be **REVERSED** in part, and that this matter be **REMANDED**

under sentence four.

The parties to this action may object to and seek review of this Report and

Recommendation, but are required to file any objections within 14 days of service,

as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule

72.1(d). Failure to file specific objections constitutes a waiver of any further right

of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and

Human Servs.*, 932 F.2d 505 (6th Cir. 1981). Filing objections that raise some

issues but fail to raise others with specificity will not preserve all the objections a

party might have to this Report and Recommendation. *Willis v. Sec'y of Health

and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of

Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Local Rule

72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2,"

etc. Any objection must recite precisely the provision of this Report and

Recommendation to which it pertains. Not later than 14 days after service of an

objection, the opposing party may file a concise response proportionate to the

objections in length and complexity. Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d).

The response must specifically address each issue raised in the objections, in the

Report and Recommendation
Cross-Motions for Summary Judgment
*Leach v. Comm'r*; Case No. 12-13150

same order, and labeled as "Response to Objection No. 1," "Response to Objection

No. 2," etc.  If the Court determines that any objections are without merit, it may

rule without awaiting the response.

Date: June 11, 2013                    s/Michael Hluchaniuk
                                       Michael Hluchaniuk
                                       United States Magistrate Judge

<u>**CERTIFICATE OF SERVICE**</u>

I certify that on June 11, 2013, I electronically filed the foregoing paper with
the Clerk of the Court using the ECF system, which will send electronic
notification to the following: <u>Margaret A. O'Donnell, Ameenah Lewis, William L.
Woodard, AUSA, and the Commissioner of Social Security</u>.

                                       s/Tammy Hallwood
                                       Case Manager
                                       (810) 341-7887
                                       tammy_hallwood@mied.uscourts.gov

Report and Recommendation
Cross-Motions for Summary Judgment
*Leach v. Comm'r*; Case No. 12-13150